STATE of Minnesota, Appellant,

v.

Janet Kay ANHALT, Respondent.

No. C2–00–2238.

Court of Appeals of Minnesota.

June 19, 2001.

Mike Hatch, Attorney General, St. Paul; and James C. Backstrom, Dakota County Attorney, Scott A. Hersey, Assistant County Attorney, Dakota County Judicial Center, Hastings, (for appellant).

Lawrence Nichols, Eagan, (for respondent).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

Considered and decided by STONEBURNER, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

The district court determined that a no-knock search warrant executed at respondent Janet K. Anhalt's residence was improperly issued because the warrant application lacked sufficient facts to justify an unannounced entry. The district court granted Anhalt's motion to suppress and dismissed appellant state's case against Anhalt, despite the fact that the officers knocked and announced before executing the warrant. We reverse and remand.

## FACTS

In April 2000, South St. Paul Police Officer Sneitzer investigated "possible drug sales or usage" at respondent Janet K. Anhalt's residence. Sneitzer initiated this investigation because he had received complaints "about heavy traffic of persons coming and going" from Anhalt's residence. On April 20, 2000, Sneitzer applied for a warrant to search Anhalt's residence. In the application, Sneitzer indicated that Anhalt was involved in the sale and/or use of narcotics. He also stated that within 24 hours prior to applying for the warrant, he had searched Anhalt's garbage and found items indicative of methamphetamine use. These items included charred pieces of aluminum foil and clear plastic sandwich bags. The Minneapolis Health Lab analyzed these items and detected methamphetamine in one of the clear plastic bags.

Sneitzer requested authorization to enter Anhalt's residence unannounced, claiming it would be necessary

appointment pursuant to Minn. Const. art. VI, § 10.

to prevent the loss, destruction or removal of the objects of the search [and] to protect the safety of the peace officers * * * because: drugs are easily disposable, and through previous experience, I have learned that [d]rug dealers are known to possess firearms to protect their interest.

On April 20, 2000, the district court issued a search warrant authorizing an unannounced entry.

Officers arrived at Anhalt's residence on April 27, 2000, at approximately 6:00 p.m., to execute the warrant. Sneitzer and Burnsville police officer Jeffrey Pfaff both testified that Sneitzer knocked loudly on Anhalt's metal porch door. Sneitzer yelled out, "Police, search warrant." When no one answered, the officers entered the porch through the metal door. Upon entering the porch, they noticed a second door leading directly into Anhalt's house, which was ajar. The officers entered this second door without knocking. Once inside the house, the officers announced that they were police officers executing a search warrant. Anhalt was in the home during the search. Anhalt's children testified that they were also in the home when the warrant was executed, but did not hear the officers knock before entering. Inside Anhalt's residence, the officers found methamphetamine and drug paraphernalia.

On April 28, 2000, Anhalt was charged with one count of third-degree controlled substance crime and one count of fourth-degree controlled substance crime. On August 11, 2000, Anhalt filed a motion to suppress the evidence taken from her home during the police search, contending that the search warrant lacked sufficient justification for an unannounced entry. On August 18 and 28, 2000, a contested omnibus hearing was held. On December 21, 2000, the district court issued an order

(1) concluding that the no-knock warrant was improperly issued in violation of Anhalt's Fourth Amendment rights and (2) suppressing the evidence seized during the search.

Regarding the sufficiency of information contained in the search warrant application, the district court found that the "application for the search warrant contained boilerplate language in support of a request for a no-knock entry." The court also found that there was an insufficient showing in the application that an announced entry would result in the destruction of evidence or in danger to the officers executing the warrant. But the court found

[b]efore entering the residence, the officers knocked on the screen door leading to the front porch of [Anhalt's] home. The officers knocked several times and announced their entry by calling "Police, search warrant" as they entered the home.

The district court did not make a finding as to whether sufficient facts had been presented to the magistrate to support a finding of probable cause to search the home.

### ISSUE

Did the district court clearly err in suppressing evidence seized from Anhalt's house where the search warrant contained a void no-knock provision, but the police knocked and announced their entry before conducting the search?

### ANALYSIS

 Normally [an appellate] court will only reverse a pre-trial decision of the [district] court suppressing evidence if the State demonstrates clearly and unequivocally that the [district] court has erred in its judgment and that, un-

less reversed, the error will have a critical impact on the outcome of the trial. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992) (citation and quotation omitted). "[T]he critical impact of the suppression must be first determined before deciding whether the suppression order was made in error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998) (citation omitted). Here, the district court's decision to suppress evidence terminated the state's case against Anhalt and therefore, the suppression will have a critical impact. *See State v. Kim*, 398 N.W.2d 544, 551 (Minn.1987) (stating critical impact has been shown in cases "where the lack of the suppressed evidence completely destroys the state's case," and "in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution").

▪ "When reviewing the legality of a seizure or search, an appellate court will not reverse the [district] court's findings unless clearly erroneous or contrary to law." *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn.1997) (citation omitted). But where "[t]he district court's order is based upon an interpretation of law" the appellate court's "review [is] de novo." *State v. Robb*, 605 N.W.2d 96, 99–100 (Minn.2000) (citation omitted).

Here a factual dispute existed: the police testified that they knocked loudly before entering Anhalt's home, but her children testified that they did not hear any knocking and that they would have heard it if the police had knocked. The trial court's finding that the police knocked is supported by the record and is not clearly erroneous.

▪ In determining whether the district court's application of the law was correct, the proper inquiry begins with an analysis of the warrant application. Police seeking a search warrant authorizing an unannounced entry "must inform the issuing magistrate of the circumstances which they believe justify the unannounced entry and obtain specific advance authorization for it." *State v. Lien*, 265 N.W.2d 833, 838 (Minn.1978). The police are required to make a strong showing "that an announced entry will result in the destruction of evidence or in danger to the officers executing the warrant." *Id.* The police "must do more than simply make a showing that drugs are involved." *Id.* Moreover, boilerplate language without particularized reasons for an unannounced entry is insufficient to show that an announced entry "would be dangerous or allow the destruction of evidence." *State v. Wasson*, 615 N.W.2d 316, 320 (Minn.2000); *see State v. Martinez*, 579 N.W.2d 144, 147–48 (Minn. App.1998) (finding that officer's statement that "because of his experience he knew that the occupants would likely have and use weapons" was a generalization), *review denied* (Minn. July 16, 1998).

▪ In requesting a no-knock warrant, Sneitzer merely made general observations, regarding what drug dealers are known to do and how drugs may be discarded easily, none of which were specific to Anhalt. Accordingly, the district court correctly concluded that the no-knock request was improperly granted.

▪ We disagree, however, with the district court's conclusion that because the no-knock warrant was improperly issued, the entire search of Anhalt's house was tainted, particularly where the police adhered to knock-and-announce procedures prior to conducting the search. Before executing a search warrant, officers must knock, identify themselves as law-enforcement officers, and state that they have a search warrant. *See State v. Linder*, 291 Minn. 217, 219, 190 N.W.2d 91, 93 (1971).

In the present case, the district court found that before the officers entered Anhalt's residence they knocked and that as they entered they "announced their entry by calling 'Police, search warrant.'" Because the officers knocked and announced their entry, we conclude that the factual situation is the equivalent to one in which a search is executed pursuant to a warrant without a no-knock provision. Consequently, if the magistrate properly found probable cause to issue the warrant, the evidence should not be suppressed. *See State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (reviewing courts should defer to a magistrate's determination of probable cause). If, on the other hand, the magistrate did not have sufficient information to make a finding of probable cause, the district court's decision to suppress should be affirmed. The trial court did not make a finding on whether the magistrate had sufficient facts to find probable cause. Therefore we reverse the district court's decision suppressing the evidence and remand for findings on the issue of whether sufficient facts were presented to the magistrate to support a finding of probable cause to issue the warrant without a no-knock provision.

## DECISION

We reverse and remand this case for the district court to determine whether the magistrate properly found probable cause to issue the search warrant.

**Reversed and remanded.**