2004 ND 23

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Todd ROTH, Defendant and Appellant.**

**No. 20030102.**

Supreme Court of North Dakota.

Jan. 28, 2004.

Rehearing Denied Feb. 25, 2004.

Steven Balaban, Bismarck, for defendant and appellant.

Cynthia M. Feland, Assistant State's Attorney, Bismarck, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Todd Roth appeals the criminal judgment and the trial court's decision denying his motion to suppress evidence seized during a search of his residence. The trial court found probable cause did not support a no-knock provision in the authorized search warrant, but the officers acted reasonably when they executed the search warrant without utilizing the no-knock provision. Roth contends the trial court erred in denying his motion to suppress evidence because probable cause did not exist, the trial court improperly relied on a confidential informant's tip, and the information supporting probable cause was stale. We affirm.

I

[¶ 2] Metro Area Narcotics Task Force member and Morton County Sheriff's Deputy Dion Bitz applied for a no-knock search warrant for Todd Roth's Bismarck, North Dakota, residence on August 20, 2002. Deputy Bitz presented an affidavit alleging Roth's involvement with persons

suspected of drug trafficking. The affidavit also set forth Roth's previous conduct. On May 3, 2002, Roth's vehicle was searched and officers found marijuana, methamphetamine, and a loaded .45 caliber magazine clip, which belonged to a gun that Roth informed the officers was at his residence. On May 7, 2002, officers searched Roth's residence and uncovered a scale and mirror containing residue. The warrant application contained tips from a confidential informant who allegedly witnessed Roth cooking methamphetamine at Roth's residence. According to the application, the informant had previously provided reliable information that resulted in both state and federal prosecutions.

[¶ 3] The magistrate issued the search warrant containing the no-knock authorization on August 20, 2002. Law enforcement executed the search warrant on August 28, 2002. The executing officer knocked and announced his presence before executing the search warrant, despite the no-knock authorization. Roth was subsequently arrested and charged with possession of methamphetamine, possession of drug paraphernalia, and manufacture of methamphetamine.

[¶ 4] Roth moved to suppress evidence seized during the search. The trial court determined the no-knock authorization was unsupported by exigent circumstances. However, the trial court applied the good-faith exception to the exclusionary rule because the no-knock provision was not used in executing the search warrant. The trial court found the officers executing the search warrant realized the no-knock provision was invalid and therefore knocked and announced their presence. Roth appeals.

## II

[¶ 5] On appeal, we review the sufficiency of information before the magistrate independent of the trial court's decision and use the totality-of-the-circumstances test. *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994).

> "Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the "laminated" total.' "

*State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912 (citations omitted). "Whether probable cause exists to issue a search warrant is a question of law." *State v. Thieling*, 2000 ND 106, ¶ 8, 611 N.W.2d 861. Questions of law are fully reviewable. *State v. Wanzek*, 1999 ND 163, ¶ 5, 598 N.W.2d 811.

[¶ 6] We generally defer to a magistrate's determination of probable cause if a substantial basis for the conclusion exists, and doubtful or marginal cases should be resolved in favor of the magistrate's determination. *State v. Ballweg*, 2003 ND 153, ¶ 12, 670 N.W.2d 490. This Court defers to the trial court's findings of fact and resolves conflicts in testimony in favor of affirmance. *State v. Haverluk*, 2000 ND 178, ¶ 7, 617 N.W.2d 652.

[¶ 7] "[P]robable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). "The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a

particular place." *Rydberg*, 519 N.W.2d at 308.

### III

[¶ 8] Roth argues probable cause did not exist to support the issuance of the search warrant. Specifically, Roth argues the trial court erroneously relied on Deputy Bitz's conclusory statements regarding the informant's tip. According to Roth, the informant's tip should have been disregarded because Deputy Bitz failed to independently verify the informant's reputation for truthfulness or verify the accuracy of the informant's tip through corroboration or independent investigation.

[¶ 9] We have previously identified three types of informants with varying degrees of reliability: citizen, confidential, and anonymous. "[A] magistrate must take into account the status of an informant in judging his credibility or reliability." *State v. Ronngren*, 361 N.W.2d 224, 227 (N.D.1985).

[¶ 10] A citizen informant is "someone who volunteer[s] information, [does] not want anything in return for the information, and [is] not at risk or in fear of going to jail." *State v. Rangeloff*, 1998 ND 135, ¶ 4, n. 3, 580 N.W.2d 593. "We have recognized that citizen informants are presumed reliable, and that their reliability should be evaluated from the nature of their report, their opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation." *State v. Frohlich*, 506 N.W.2d 729, 733 (N.D.1993) (citations omitted).

[¶ 11] Generally, a confidential informant is known to the police officer, but his or her identity is concealed from the magistrate. *See, e.g., State v. Dymowski*, 458 N.W.2d 490, 496 (N.D.1990) (noting, "[t]he informant ... is confidential, unknown to the magistrate issuing the warrant, but known by [the agent], who could and did vouch for his reliability and veracity"). *Id.* "A named 'citizen informant' differs significantly from a ... confidential informant whose identity is being protected." *Ronngren*, 361 N.W.2d at 227. However, while a confidential informant does not enjoy the same presumed reliability as a citizen informant, he or she is still considered more reliable than an anonymous informant. Indeed, we have previously stated that "[t]he most reliable tip is ... one relayed personally to the officer." *State v. Miller*, 510 N.W.2d 638, 640 (N.D. 1994).

[¶ 12] An anonymous informant is one unknown to both the investigating officer and the magistrate. We have stated within the context of anonymous informants that an " 'informant must supply information from which one may conclude that the informant is honest and his information is reliable, or from which the informant's basis of knowledge can be assessed.' " *State v. Hage*, 1997 ND 175, ¶ 17, 568 N.W.2d 741 (quoting *Woehlhoff v. State*, 487 N.W.2d 16, 18 (N.D.1992)) (citing *State v. Thompson*, 369 N.W.2d 363, 367 (N.D. 1985)).

[¶ 13] Roth incorrectly applies the standard for evaluating an anonymous informant's tip when he argues the tip should have been disregarded because Deputy Bitz failed to independently verify the informant's reputation for truthfulness or verify the accuracy of the informant's tip through corroboration or independent investigation. In this case, if the informant were anonymous, corroboration might have been required:

"If the informant does not supply the information necessary to evaluate the tip, the police must, through independent investigation, corroborate the tip or develop other sources of information

leading to the conclusion that evidence of a crime will probably be found in a particular place."

*Hage*, at ¶ 17 (quoting *Woehlhoff*, 487 N.W.2d at 18). However, because the informant was confidential, i.e. known to the officer, a higher degree of reliability attaches. This case is similar to *Dymowski*, in which we upheld the magistrate's finding of probable cause based on a confidential informant's tip because the police officer "could and did vouch for [the confidential informant's] reliability and veracity." *Dymowski*, 458 N.W.2d at 496. Here, Deputy Bitz effectively vouched for the confidential informant's reliability and veracity in his supporting affidavit. The informant's veracity and reliability were evaluated in light of his past contact with law enforcement. Deputy Bitz's affidavit set forth the basis for his belief that the informant's information was reliable by stating the informant had provided reliable information in the past that had been independently corroborated and resulted in successful state and federal prosecutions. Deputy Bitz also noted the confidential informant had recently provided information leading to the arrest of a narcotics trafficker and had provided reliable information related to other local drug traffickers that had been independently corroborated.

[¶ 14] Additionally, the confidential informant supplied detailed information regarding his knowledge of Roth's manufacture of methamphetamine in his home. He described Roth's method of manufacture and provided minute details of the process he observed. *See State v. Holzer*, 2003 ND 19, ¶ 14, 656 N.W.2d 686 (observing, "[The informant's] level of specificity in describing the drug activity that was taking place at the residence made it more likely that the information provided was accurate.").

[¶ 15] The informant's report of personal observations, combined with Deputy Bitz's assertion that the informant had provided reliable information in the past, supports a finding of probable cause. The magistrate had a substantial basis to conclude there was a fair probability contraband or evidence of a crime would be found in Roth's residence.

### IV

[¶ 16] Roth argues the affidavit contained stale information and bare assertions that could not support a finding of probable cause. According to Roth, Deputy Bitz relies heavily on information of Roth's previous misconduct, which does not support a finding of probable cause.

[¶ 17] Stale information of previous misconduct "'does not establish probable cause that similar or other improper conduct is continuing to occur.'" *State v. Guthmiller*, 2002 ND 116, ¶ 18, 646 N.W.2d 724 (quoting *Ringquist*, 433 N.W.2d at 213). In addition, "[s]ufficient information, rather than 'bare bones' information must be presented to the magistrate." *Thieling*, 2000 ND 106, ¶ 11, 611 N.W.2d 861. In this case, the affidavit contained information more than three months old. The trial court noted that, while the information was old, it indicated ongoing criminal activity involving Roth and supported a finding of probable cause. Staleness is determined after reviewing the particular facts of each case, and "passage of time may be unimportant to the validity of probable cause when the course of conduct is of a protracted or continuous nature." *Damron*, 1998 ND 71, ¶ 17, 575 N.W.2d 912. "Protracted and continuous activity is inherent in drug trafficking." *Ringquist*, at 214. "Drug use can also be a habituating and continuing offense." *Hage*, 1997 ND 175, ¶ 13, 568 N.W.2d 741. Deputy Bitz's affidavit included informa-

tion regarding two incidents in May 2002 involving searches of Roth's vehicle and home that revealed indicia of drug trafficking, methamphetamine, and marijuana.

[¶ 18] The affidavit also contained information that Roth was currently facing trial on charges of possession of marijuana with intent to deliver, possession of methamphetamine, and possession of drug paraphernalia. The magistrate could properly consider this information in determining whether probable cause existed to support issuance of the search warrant. "A suspect's reputation can support a determination of probable cause only when used in connection with other evidence." *Hage*, 1997 ND 175, ¶ 23, 568 N.W.2d 741. In light of the other information contained in the affidavit, including the informant's tip, prior searches, and Roth's association with others suspected of drug use and trafficking, the information regarding Roth's then current charges was properly before the magistrate.

[¶ 19] The affidavit also contained information regarding Roth's suspected involvement with other persons suspected of drug use and trafficking. "Mere suspicion that persons visiting the premises are connected with criminal activity will not suffice for issuance of a warrant to search the premises." *Ballweg*, 2003 ND 153, ¶ 23, 670 N.W.2d 490. Roth argues the State did not present any evidence Roth engaged in any illegal activity with suspected drug users. This Court has held the information regarding a suspect's associations in connection with the other minimal evidence of drug activity was at most "a very thin layer" in the probable cause analysis. *Thieling*, at ¶ 12. However, the facts in this case are distinguished from those in *Thieling*. This case involves more than minimal evidence of drug activity. Because of the informant's tip and the two prior searches revealing items indicating drug trafficking, a higher degree of suspicion attaches to Roth's associations with persons suspected of criminal activity, notably, drug activity. *See Ballweg*, 2003 ND 153, ¶ 24, 670 N.W.2d 490. "Although this is a thin layer in the probable cause analysis, it could properly be evaluated in determining whether there was probable cause to search the premises." *Id.*

[¶ 20] In addition, the affidavit stated that officers observed Roth's roommate and suspected he used methamphetamine, based on sores on his face. " 'The courts must take into account inferences and deductions that a trained and experienced officer makes.' " *Guthmiller*, 2002 ND 116, ¶ 15, 646 N.W.2d 724 (quoting *State v. Olson*, 1998 ND 41, ¶ 24, 575 N.W.2d 649). The affidavit contained information constituting more than "bare assertions":

> We have warned that sufficient information, rather than a "bare bones" affidavit, must still be presented to the magistrate to allow that official to determine probable cause. That determination cannot be a mere ratification of the bare conclusions of others. We have often emphasized that an affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause.

*State v. Ennen*, 496 N.W.2d 46, 50 (N.D. 1993) (citations omitted). As demonstrated above, the underlying information Deputy Bitz provided in the affidavit is sufficient to support his assertion that probable cause existed to believe Roth was manufacturing methamphetamine in his home. Under the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed, based on the information set forth in the affidavit.

## V

[¶ 21] Although the magistrate properly concluded probable cause existed to support the underlying search warrant, we do not believe probable cause existed to support the no-knock provision of the search warrant. Roth argues the no-knock search warrant was unreasonable because it was unsupported by exigent circumstances justifying the no-knock portion of the search warrant. Roth further argues issuance of the warrant violated his right against unreasonable searches and seizures, requiring suppression of the seized evidence.

[¶ 22] Under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the North Dakota Constitution, all searches and seizures must be reasonable. Officers generally must knock and announce their presence before entering a dwelling. *State v. Herrick*, 1997 ND 155, ¶ 17, 567 N.W.2d 336 (citing *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)). However, the reasonableness requirement is flexible and the countervailing law enforcement interests may dispense with the knock and announce requirement before entry. *Id.* at ¶ 17. Officers may validly enter without knocking and announcing their presence when there is a threat of physical violence or possible destruction of evidence. *Id.*

[¶ 23] North Dakota law requires that probable cause must be demonstrated before a no-knock search warrant may be issued. N.D.C.C. § 19–03.1–32(3). No-knock search warrants are authorized under N.D.C.C. § 19–03.1–32(3), which provides:

> Any officer authorized to execute a search warrant, without notice of the officer's authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or anything therein, if the judge or magistrate issuing the warrant has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, and has included in the warrant a direction that the officer executing it is not required to give such notice.

Probable cause determinations must be made after reviewing the facts presented in a particular case. *State v. Van Beek*, 1999 ND 53, ¶ 15, 591 N.W.2d 112. "[I]t is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

[¶ 24] Deputy Bitz's affidavit failed to provide any evidence that knocking and announcing may have placed the officers or others in danger. Deputy Bitz's affidavit failed to set forth exigent circumstances supporting issuance of the no-knock provision of the search warrant. Deputy Bitz's affidavit purports to support a no-knock provision because the search of Roth's vehicle revealed a loaded .45 caliber magazine clip. Roth later informed law enforcement that the magazine clip belonged to a gun located at Roth's residence. "A reasonable belief that firearms may be within the residence, standing alone, is clearly insufficient to justify excusing the knock and announce requirement." *State v. Hughes*, 1999 ND 24, ¶ 7, 589 N.W.2d 912 (relying on *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir. 1993)). Therefore, the trial court correctly found probable cause did not exist to support issuance of the no-knock provision. There was no substantial basis for the

magistrate's conclusion that probable cause existed for the no-knock authorization. The no-knock authorization was issued in violation of N.D.C.C. § 19–03.1–32(3).

## VI

[¶ 25] Roth argues the entire search warrant was invalid because the no-knock provision is defective. Roth suggests all four corners of the affidavit must be used in determining probable cause and, because irrelevant information is contained within those four corners, the entire search warrant should be deemed defective. We have never held that support for a search warrant must come from all four corners of an affidavit, in the sense that the search warrant must contain only relevant information within those four corners. Roth's argument is misplaced. Irrelevant information within the affidavit will not negate a finding of probable cause if there is also sufficient information within the affidavit to support a finding of probable cause. *See Ballweg*, 2003 ND 153, ¶ 25, 670 N.W.2d 490.

[¶ 26] Probative and non-probative information may be contained in an affidavit for a search warrant. It is the duty of the magistrate to filter out the non-probative information and examine the remaining information to determine whether probable cause exists. Mere existence of irrelevant information, leading to the issuance of a defective no-knock provision, will not invalidate the underlying search warrant, if it is based on probable cause.

[¶ 27] Roth argues the trial court erroneously found the officers did not use the no-knock provision because they realized it was defective. Roth further contends there is no evidence or testimony supporting the trial court's finding. The State argues a suppression hearing was held March 12, 2003, and Roth failed to

provide this Court with a transcript of the proceedings. " '[F]ailure to provide a transcript may prevent a party from being successful on appeal.' " *State v. Clark*, 2001 ND 194, ¶ 5, 636 N.W.2d 660 (quoting *Owan v. Kindel*, 347 N.W.2d 577, 579 (N.D.1984)). Although we are unable to fully review this issue, we find such review unnecessary. This review might be helpful if we were required to determine whether the trial court properly applied the good-faith exception to the exclusionary rule. However, this issue is not before us.

[¶ 28] The operative fact in this case is the officer's failure to utilize the no-knock provision, regardless of the motive for such failure. The trial court properly concluded probable cause did not exist to support the no-knock provision of the search warrant. The State does not dispute this. However, probable cause existed for the search warrant itself. Once Deputy Bitz functionally excised the no-knock provision by not using it, the rest of the search warrant was valid.

> Because the officers knocked and announced their entry ... the factual situation is the equivalent to one in which a search warrant is executed pursuant to a warrant without a no-knock provision. Consequently, if the magistrate properly found probable cause to issue the warrant, the evidence should not be suppressed.

*State v. Anhalt*, 630 N.W.2d 658, 662 (Minn.App.2001). The trial court properly denied Roth's motion to suppress evidence because the no-knock provision was not utilized when the search warrant was executed. A trial court's decision on a motion to suppress will be affirmed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence. *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1.

However, we note the trial court's reliance on the good-faith exception to the exclusionary rule is unnecessary. The good-faith exception to the exclusionary rule only applies under certain circumstances when a search warrant is found to be invalid. *See United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (stating "[t]he marginal or non-existent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."). Here, the search warrant was valid because the officer's actions functionally excised its invalid portion.

## VII

[¶ 29] The trial court did not err in denying Roth's motion to suppress evidence, therefore, we affirm.

[¶ 30] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.