2013 ND 247

In the Interest of D.O., a child

State of North Dakota, Petitioner and Appellee

v.

D.O., Child, E.O., Mother, K.O., Father, Respondents

D.O., Child, Appellant.

No. 20130174.

Supreme Court of North Dakota.

Dec. 19, 2013.

Christine Hummert McAllister, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee.

Justin Jacob Vinje, Bismarck, ND, for respondents and appellant.

CROTHERS, Justice.

[¶ 1] D.O. appeals from a juvenile court's order granting the State's motion to transfer D.O.'s case to the district court and denying D.O.'s suppression motion. D.O. argues that law enforcement offered false or misleading testimony in support of the search warrant, that insufficient probable cause existed to justify the search warrant's issuance, that the juvenile court relied on out-of-court statements in violation of his statutory right to confrontation and that his case was inappropriately transferred to the district court. We affirm.

I

[¶ 2] A series of burglaries occurred over several months in Bismarck involving more than $65,000 in stolen property and property damage. D.O. is a juvenile thought to be involved with the crimes. While investigating D.O.'s involvement, Detective Matthew Fullerton performed a probation search of D.O.'s residence, obtained information from a tipster and a confidential informant, searched publicly available information on D.O.'s Facebook page and performed a "cell tower dump" showing cell phone activity in the area of the burglaries at the time they occurred.

[¶ 3] Fullerton filed search warrant affidavits on January 16, 2013 for Facebook information and for text message content. According to Fullerton's Facebook affidavit, the cell tower dump revealed D.O.'s phone was near three burglary sites at the time they occurred. The text message affidavit states that during a probation search of D.O.'s residence Fullerton found items similar to those reported missing during a gas station burglary. Fullerton also found a backpack containing light-colored latex gloves, dark clothing and tools. Fullerton testified that surveillance from the robberies showed culprits wearing light-colored gloves and dark clothing, but that the items found could not be matched definitively to the footage. The Facebook affidavit also indicates D.O.'s publicly available Facebook information showed comments about "robbin shit like a thug crook," "snitches" and pictures of large sums of money.

[¶ 4] Fullerton sought access to all known Facebook information, including basic subscriber information, expanded subscriber information—such as wall posts,

friend lists and status updates—user photos, and private messages using Facebook's instant messaging service from July 20, 2012 until the time he filed the affidavit. Fullerton sought all known data associated with photos posted on D.O.'s wall on December 12, 2012, when a photo depicting large sums of money was posted. Fullerton requested text message content for D.O.'s cell phone because he believed relevant texts were sent and received after the burglaries and after D.O.'s probation search.

[¶ 5] The State filed a juvenile court petition on April 16, 2013, alleging numerous acts of criminal mischief and burglary. The State then moved to transfer the proceeding to district court. D.O. opposed transfer to district court, moving to suppress evidence from the search warrant because he alleged law enforcement provided false or misleading information to support their search warrant request and the affidavit did not establish probable cause for the warrant. The juvenile court held a transfer hearing encompassing D.O.'s *Franks* issue and probable cause issue. The court denied D.O.'s motion to suppress evidence, finding law enforcement did not provide false or misleading information in its affidavit requesting the Facebook search warrant and probable cause existed to issue the search warrant. The juvenile court also found probable cause for transferring the case to the district court.

## II

[¶ 6] This Court's standard of review of a juvenile court's order is well-established:

"Under N.D.R.Civ.P. 52(a), this Court reviews a juvenile court's factual findings under a clearly erroneous standard of review, with due regard given to the opportunity of the juvenile court to judge the credibility of the witnesses. A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law. This Court reviews questions of law de novo."

*Interest of R.A.*, 2011 ND 119, ¶ 4, 799 N.W.2d 332 (quoting *Interest of A.R.*, 2010 ND 84, ¶ 5, 781 N.W.2d 644).

## III

[¶ 7] D.O. argues law enforcement offered false or misleading testimony regarding matching shoe prints in support of the search warrant. He asserts that, because the information was relevant to the judge's determination of probable cause, the offending statements should be stricken from the affidavit.

[¶ 8] When a defendant believes false or misleading testimony has been offered in support of a search warrant, a defendant can request a *Franks* hearing. *State v. Donovan*, 2004 ND 201, ¶ 7, 688 N.W.2d 646; *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A hearing must be held on the matter if requested to determine the effect on probable cause. *Donovan*, at ¶ 7; *Franks*, at 155–56, 98 S.Ct. 2674. "The defendant has the burden to prove false statements were made intentionally or with reckless disregard for the truth, and whether this burden was met is reviewed under the clearly erroneous standard." *Donovan*, at ¶ 8. "A false affidavit statement under *Franks* is one that misleads the neutral and detached magistrate into believing the stated facts exist, and those facts in turn affect the magistrate's evaluation of whether or not there is probable cause." *Donovan*, at ¶ 7 (quoting *State v. Jones*, 2002 ND 193, ¶ 10, 653 N.W.2d 668). "When there is a claim statements

are misleading because important information was omitted, the defendant has the burden to show: (1) that law enforcement omitted facts with the intent or in reckless disregard of whether they made the affidavit misleading, and (2) the affidavit would not have been sufficient to support a finding of probable cause if the omitted information had been included." *State v. Poitra*, 2010 ND 137, ¶ 17, 785 N.W.2d 225.

[¶ 9] D.O. argued Fullerton's Facebook affidavit falsely stated D.O.'s shoe prints were found at the burglary scenes. Examination of the search warrant affidavit reveals Fullerton twice referenced shoe prints found at the crime scenes. Fullerton claimed the burglaries were connected because "[t]wo distinct sets of footprints have been found on at least three (3) incidents." He then stated:

> "That I am requesting a search warrant be obtained for *these individuals' accounts* based on known Facebook activity, and other factors, including but not limited to: Crime stopper's tips being received that these subjects are involved, a Confidential Informant, who has been proven to be a reliable source, relaying information pertaining to their involvement, known cell phone activity in the area of the burglaries, *and matching shoe prints at the burglary sites.*"

(Emphasis added.) Fullerton listed matching prints as one of several reasons justifying a search warrant for the four named individuals' Facebook accounts. Reading the affidavit in its entirety shows the mention of the shoe prints connected the burglaries to one another, rather than specifically to D.O. At most, this suggested the matching shoe prints possibly belonged to one of the four named individuals against whom Fullerton sought the warrant. This is not enough to show intentional fraud or reckless disregard of whether the affidavit was misleading.

[¶ 10] We also must ask whether the affidavit would not have been sufficient to support finding probable cause if the omitted information was included. *Poitra*, 2010 ND 137, ¶ 17, 785 N.W.2d 225. Had Fullerton explicitly included that he was unsure whether the matching shoe prints were connected to the named individuals in the affidavit, sufficient evidence to support a finding of probable cause still existed, as discussed in section IV below.

[¶ 11] The juvenile court was not clearly erroneous in finding D.O. failed to show Fullerton supported his search warrant affidavit with false or misleading information.

## IV

[¶ 12] D.O. argues insufficient probable cause existed to issue the search warrant.

[¶ 13] "The existence of probable cause [to issue a search warrant] is a question of law." *State v. Dodson*, 2003 ND 187, ¶ 9, 671 N.W.2d 825. "Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *Donovan*, 2004 ND 201, ¶ 13, 688 N.W.2d 646 (quoting *Jones*, 2002 ND 193, ¶ 14, 653 N.W.2d 668). "Probable cause to search exists 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.'" *State v. Thieling*, 2000 ND 106, ¶ 7, 611 N.W.2d 861 (citation omitted). "This Court reviews a search warrant's validity using the totality-of-the-circumstances approach, in-

dependent of the district court's determination." *State v. Proell*, 2007 ND 17, ¶ 12, 726 N.W.2d 591. "We consider all information for probable cause together, and we test affidavits executed in support of a warrant in a commonsense and realistic fashion." *Id.* "We generally defer to a magistrate's determination of probable cause if a substantial basis for the conclusion exists, and doubtful or marginal cases should be resolved in favor of the magistrate's determination." *State v. Roth*, 2004 ND 23, ¶ 6, 674 N.W.2d 495.

 [¶ 14] The "totality-of-the-circumstances" regarding D.O. include a confidential informant's tip and an anonymous tip about his involvement, his cell phone activity around the sites at the times of the burglaries, his publicly available Facebook postings and pictures, information garnered from a probation search of his residence and matching shoe prints found at three burglary sites. Although the matching footprints were not successfully linked to D.O., probable cause deals with probabilities; a reasonable theory of probable cause is not retroactively disproved simply because hindsight reveals the theory was in error. *State v. Driscoll*, 2005 ND 105, ¶ 25, 697 N.W.2d 351. "A tower dump allows police to request the phone numbers of all phones that connected to a specific tower within a given period of time." The Honorable Brian L. Owsley, *The Fourth Amendment Implications of the Government's Use of Cell Tower Dumps in its Electronic Surveillance*, 16 U. Pa. J. Const. L. 1, 2 (2013) (quoting Jeffrey Brown, *What Type of Process is Required for a Cell Tower Dump?*, Cybercrime Rev. (May 16, 2012), http://www.cybercrimereview.com/ 2012/05/what-type-of-process-is-required-for.html). The cell tower dump in this case showed D.O.'s cell phone was near three burglary sites at the same date and time the burglaries oc-

curred. D.O.'s publicly available Facebook information intimated he was involved in burglary and criminal mischief because it referenced "robbing" and showed pictures of money piles. A confidential informant also linked D.O. to the crimes. Although D.O. challenges the information given by the confidential informant because the informant was a member of the criminal milieu, "[r]eliability of an informant can be established numerous ways, such as corroboration through independent investigation, by affiant's vouching or assertion that the information is reliable, or by the informant giving detailed information overcoming any doubt." *State v. Stewart*, 2006 ND 39, ¶ 8, 710 N.W.2d 403 (citations omitted). In this case, Fullerton vouched for the confidential informant, stating he has proven to be a reliable source. When a confidential informant is "known to the officer, a higher degree of reliability attaches." *Roth*, 2004 ND 23, ¶ 13, 674 N.W.2d 495. Considering the totality of the circumstances and all assertions Fullerton made in his Facebook search warrant affidavit, sufficient detail was presented to establish probable cause.

[¶ 15] Fullerton also filed a search warrant affidavit for the text message content from D.O.'s cell phone at the same time he filed his Facebook search warrant affidavit. The second affidavit included information about the results of the probation search of D.O.'s residence, which revealed a backpack with tools, white latex gloves and dark-colored clothing. These items were consistent with surveillance video, showing burglars wearing light-colored gloves and dark clothing.

 [¶ 16] "We consider all information for probable cause together, and we test affidavits executed in support of a warrant in a commonsense and realistic fashion." *Proell*, 2007 ND 17, ¶ 12, 726 N.W.2d 591. "[T]here is no inherent de-

fect in utilizing multiple affidavits." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(d) (5th ed.2012) (citing *United States v. Blakeney*, 942 F.2d 1001, 1023–24 (6th Cir.1991) (concluding a search warrant was valid when an officer submitted two affidavits in support of the warrant, and while the magistrate only explicitly referenced one of the affidavits in the warrant, the other affidavit was incorporated by reference); *State v. Boushee*, 284 N.W.2d 423, 429 (N.D.1979) (concluding that despite only mentioning one affidavit in the search warrant, commonsense requires the acknowledgment that both affidavits were in front of the magistrate when he determined whether probable cause existed to issue a search warrant, and the two affidavits provided sufficient probable cause)). Here the magistrate had both affidavits when he issued the Facebook search warrant. Considering all information for probable cause together in a commonsense and realistic fashion prevents us from ignoring that the results of the probation search as discussed in the text message search warrant were readily available to the magistrate when he issued the Facebook warrant. As such, although probable cause likely existed solely using the Facebook search warrant, the second warrant and the information concerning the tools, white gloves and dark clothing found in D.O.'s room bolster the magistrate's determination probable cause supported the search warrants.

[¶ 17] Probable cause existed to justify the issuance of the Facebook search warrant.

### V

[¶ 18] D.O. argues his statutory right to confrontation was violated when the juvenile court admitted hearsay evidence during the transfer hearing and when the State failed to provide notice of the witnesses it intended to call.

[¶ 19] Section 27–20–27, N.D.C.C., provides a statutory right to cross-examine adverse witnesses at transfer hearings. In *Interest of R.A.*, this Court discussed that "the right to confrontation is a trial right and does not apply to the same extent at pretrial hearings." 2011 ND 119, ¶ 30, 799 N.W.2d 332 (R.A. raised a confrontation issue when the court limited R.A.'s ability to cross-examine A.H. about her sexual history with R.A. during the transfer hearing, but did allow R.A. to cross-examine A.H. on other topics.). We examined the cross-examination right not as a confrontation issue, but as "an issue of the admissibility of evidence." *Id.* at ¶ 31.

> "A juvenile does not receive greater evidentiary protections during a juvenile transfer hearing than other criminal defendants receive during pretrial criminal proceedings. 'A juvenile court transfer hearing is equivalent to a preliminary examination in a criminal case which has relaxed standards for admission of evidence.' N.D.R.Ev. 1101, explanatory note. The rules of evidence do not apply during a transfer hearing. *See* N.D.R.Ev. 1101(d); *see also In re C.R.M.*, 552 N.W.2d 324, 327 (N.D.1996) (the rules of evidence do not apply at a transfer hearing and hearsay testimony is admissible)."

*Interest of R.A.*, at ¶ 31. This Court in *Interest of C.R.M.* allowed a detective to present hearsay testimony based on statements of others made during his investigation because the detective was available for cross-examination. 552 N.W.2d 324, 327–28 (N.D.1996).

[¶ 20] Reading the statute together with this Court's precedent, and considering the relaxed evidentiary standards in pretrial matters, the juvenile court did not err in admitting out-of-court statements at

the hearing. As in *C.R.M.*, Fullerton was available for cross-examination and was an adverse witness contemplated under section 27–20–27, N.D.C.C. This also was an early hearing, and it would not curtail D.O.'s ability to cross-examine witnesses at trial.

[¶ 21] D.O. alleges the State did not provide sufficient notice of the witnesses it intended to call at the transfer hearing. While the State did not provide the names and addresses of the witnesses in its response, all witnesses had been disclosed during the discovery process. Further, when the State's two witnesses were called, D.O. did not object to either witness, but only objected to their hearsay testimony. D.O. also conflates notice of the hearing with providing notice of witnesses because he cites *State v. Grenz* for the proposition that notice of witnesses is an integral part of transfer proceedings, when that case discussed notice of the hearing itself. 243 N.W.2d 375, 381 (N.D. 1976).

[¶ 22] D.O.'s statutory right to confrontation was not violated during presentation of testimony at the transfer hearing.

## VI

[¶ 23] D.O. argues his case was inappropriately transferred to the district court.

[¶ 24] To transfer D.O.'s case to the district court, the State must show reasonable grounds exist to believe that:

"(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available programs;

(c) The child is not treatable in an institution for individuals who are intellectually disabled or who are mentally ill;

(d) The interests of the community require that the child be placed under legal restraint or discipline; and

(e) If the child is fourteen or fifteen years old, the child committed a delinquent act involving the infliction or threat of serious bodily harm."

N.D.C.C. § 27–20–34(1)(c)(4). Sub-parts (c) and (e) are not applicable to this case.

[¶ 25] This Court previously discussed the "reasonable grounds" burden:

"The Legislature has set forth a 'reasonable grounds' standard for waiver of juvenile court jurisdiction and transfer of juveniles to adult court in section 27–20–34(1)(b)(4), NDCC. The standard of reasonable grounds has been compared to a showing of probable cause. *Draper v. United States*, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327] (1959); *In Interest of A.D.L.*, 301 N.W.2d 380 (N.D.1981). Probable cause is a minimal burden of proof. It is generally employed in the judicial decision-making process when the effect of the determination has temporary or short-term consequences. *Healy v. Healy*, 397 N.W.2d 71 (N.D. 1986). We have held that if it appears to be so or there is a definite probability based on substantial evidence, the standard of probable cause has been met. *Woehlhoff v. State*, 487 N.W.2d 16 (N.D. 1992); *In Interest of R.R.*, 305 N.W.2d 38 (N.D.1981) (citing *State v. Persons*, 201 N.W.2d 895 (N.D.1972)). Therefore, a waiver-of-jurisdiction hearing is decided upon whether or not there is probable cause, 'reasonable grounds', that the factors listed in section 27–20–34(1)(b)(4), NDCC, are met. The State bears the burden of persuasion on these issues. *A.D.L., supra.*"

*Interest of M.D.N.*, 493 N.W.2d 680, 684 (N.D.1992).

[¶ 26] D.O. concedes that should his suppression motion and confrontation ob-

jection fail, probable cause likely would exist as to the alleged offenses. We have determined D.O.'s suppression motion and confrontation objection fail. Fullerton offered testimony regarding his investigation to determine whether D.O. committed the alleged delinquent acts, including information from a cell tower dump, tipster information, confidential informant information, a search of publicly available Facebook information and a probation search of D.O.'s residence. The State provided sufficient evidence supporting probable cause that D.O. committed the alleged delinquent act. N.D.C.C. § 27–20–34(1)(c)(4)(a).

[¶ 27] In support of the State's argument that D.O. is not amenable to treatment under section 27–20–34(1)(c)(4)(b), N.D.C.C., Juvenile Court Officer Doug Sailer testified about D.O.'s extensive record, including three formal juvenile probations and one informal probation, his continued substance abuse and his general failures in prior treatment. Sailer opined D.O.'s placement with the Division of Juvenile Services was not a viable option. The juvenile court judge noted that D.O. will turn eighteen at the end of 2013 and that, although jurisdiction can run until a child turns twenty, options for treatment and rehabilitation reduce significantly following the eighteenth birthday. On this evidence, we conclude the juvenile court did not err by finding D.O. is not amenable to treatment or rehabilitation as a juvenile through available programs. N.D.C.C. § 27–20–34(1)(c)(4)(b).

[¶ 28] The juvenile court judge also noted the severity of the crimes D.O. was accused of committing.

"The Court notes that the nature and circumstances of the alleged offenses involve several months of premeditated, pre-planned, glorified, and callous criminal actions involving burglaries, attempted burglaries, and criminal mischief totaling in excess of $65,000.00 in stolen property and property damage, showing elevated mental capacity and maturity levels. The testimony also revealed that the alleged felonious criminal conduct is of a high degree of criminal sophistication with great care taken to avoid apprehension, including using latex gloves and disguises to avoid detection."

The judge explicitly recognized that the severity of the allegations require D.O. be placed under legal restraint or discipline for the best interests of the community. Sufficient evidence existed supporting probable cause that the interests of the community require the child be placed under legal restraint or discipline. N.D.C.C. § 27–20–34(1)(c)(4)(d).

## VII

[¶ 29] We conclude that the juvenile court was not clearly erroneous in denying D.O.'s suppression motion for failing to show Fullerton supported his search warrant affidavit with false or misleading information, that sufficient probable cause existed to justify the search warrant's issuance, that the juvenile court did not violate D.O.'s confrontation rights and that the case was properly transferred to the district court. We affirm the juvenile court's order granting the State's motion to transfer D.O.'s case to the district court and denying D.O.'s suppression motion.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.