2006 ND 196

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**ReAnna L. GRAF, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Samuel Lee Parisien, Defendant and Appellant.**

**Nos. 20050410—20050413, 20050414—20050417.**

Supreme Court of North Dakota.

Sept. 13, 2006.

---

Nancy Darlene Yon (appeared), Assistant State's Attorney, and Justin Vinje (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, Grand Forks, N.D., for plaintiff and appellee.

Robin L. Olson, Olson Johnston Law Office, Grand Forks, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶ 1]   ReAnna Graf and Samuel Parisien appeal from convictions for drug-related offenses entered after they conditionally pled guilty to the charges. We conclude Parisien's consent to a search of his apartment after consultation with an attorney purged the taint of law enforcement's unlawful entry into the apartment. We affirm.

I

[¶ 2]   On February 22, 2005, the manager of a Grand Forks apartment complex called a law enforcement officer to report her suspicions of drug activity in one of the apartments she managed. After speaking with the apartment manager, four officers went to the apartment, which was occupied by Graf and Parisien. The officers knocked on the apartment door, and when Graf answered, they told her they were investigating a complaint that drugs were present in the apartment.

[¶ 3]   The parties dispute whether Graf invited the officers into the apartment. The State claims Graf verbally consented to the officers' entry into the apartment. Graf and Parisien claim Graf merely turned and walked into the living room to inform Parisien that the officers were there investigating a complaint, and she did not consent to the officers' entry into the apartment.

[¶ 4]   Once inside the apartment, one officer observed a marijuana cigarette in an ashtray in the living room. When the officers asked Parisien if he would sign a written consent to search the apartment, Parisien telephoned his mother. When Parisien did not respond to further requests for consent to a search, one of the officers left to obtain a search warrant. Shortly thereafter, Parisien's mother and her husband arrived at the apartment, followed closely by an attorney. According to one of the officers, the attorney spoke with the officer and then conferred with Parisien. According to Parisien, the attorney "took [Parisien] down the hall to the front steps to talk with [Parisien]" and Parisien "told [the attorney] what was going on [and the attorney] told [Parisien] to sign the consent to search because [the attorney] felt they were going to get the warrant anyway." According to Parisien, he talked with the attorney for "about five

minutes." The attorney served as a witness when Parisien signed a written "consent to search" the apartment. A search of the apartment resulted in the seizure of drug paraphernalia, methamphetamine, and marijuana.

[¶ 5] Graf and Parisien were each charged with two counts of possession of drug paraphernalia and possession of both methamphetamine and marijuana with intent to deliver. Graf and Parisien moved to suppress the evidence seized during the search of their apartment. The district court found that Graf had not verbally consented to a search of the apartment when the officers followed her into the apartment. The court concluded, however, that the illegality of the officers' initial entry into the apartment was purged by Parisien's subsequent written consent to search the apartment after consultation with an attorney and that the evidence seized during the search would inevitably have been discovered. The court denied the motion to suppress. Graf and Parisien subsequently entered conditional pleas of guilty under N.D.R.Crim.P. 11(a)(2) to the charges.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals are timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 7] In reviewing a district court's decision on a motion to suppress evidence, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Smith,* 2005 ND 21, ¶ 11, 691 N.W.2d 203. We will affirm a district court's decision on a motion to suppress if "there is sufficient competent evidence fairly capable of sup-

porting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D. 1994). Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. *State v. Mitzel,* 2004 ND 157, ¶ 10, 685 N.W.2d 120. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Id.*

## III

[¶ 8] Graf and Parisien claim the district court erred in denying their motion to suppress evidence seized during the search of their apartment. The State responds that the district court erred in finding Graf had not consented to the officers' entry into the apartment.

## A

[¶ 9] The Fourth Amendment to the United States Constitution and article I, § 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures in their home. *State v. DeCoteau,* 1999 ND 77, ¶ 7, 592 N.W.2d 579. Warrantless searches inside an individual's home are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Mitzel,* 2004 ND 157, ¶ 11, 685 N.W.2d 120. Searches inside an individual's home are not unreasonable, however, if the search falls under one of the well-delineated exceptions to the warrant requirement. *Mitzel,* at ¶ 11. When no exception to the warrant requirement exists, any evidence seized is inadmissible under the exclusionary rule and must be suppressed. *Id.* at ¶ 12. The State has the burden of showing a warrantless search falls within an exception to the warrant requirement. *Id.*

[¶ 10] Consent is one exception to the warrant requirement. *Mitzel*, 2004 ND 157, ¶ 13, 685 N.W.2d 120; *DeCoteau*, 1999 ND 77, ¶ 9, 592 N.W.2d 579; *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410. "The existence of consent is a question of fact to be determined from the totality of the circumstances." *Mitzel*, ¶ 13. In *DeCoteau*, at ¶ 11, we discussed requirements for obtaining a defendant's consent to a search:

"[T]o sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering." *Avila*, 1997 ND 142, ¶ 17, 566 N.W.2d 410 (citing *United States v. Jaras*, 86 F.3d 383, 390 (5th Cir.1996) (consent cannot be inferred from silence and failure to object when police do not expressly or implicitly request consent); *United States v. Shaibu*, 920 F.2d 1423, 1427 (9th Cir.1990) (absent specific request by police for permission to enter a home, government may not show consent to enter from defendant's failure to object to entry because "[t]o do so would be to justify entry by consent and consent by entry"); *United States v. Wenzel*, 485 F.Supp. 481, 483 (D.Minn.1980) (failure to order uninvited officer to leave apartment is "hardly enough to establish consent"); *Robinson v. State*, 578 P.2d 141, 144 (Alaska 1978) (where defendant at no time indicated consent to officers' presence except by silence, failure to demand that officers leave was not voluntary consent); *Ingram v. State*, 364 So.2d 821, 822 (Fla.Ct.App.1978) (submission to apparent authority of officer is not necessarily consent to search, and a showing of acquiescence without at least tacit consent is not sufficient to prove consent); I.W. Ringel, Searches &

Seizures, Arrests and Confessions § 9.3 (2d ed.1997); 2 J. Cook, Constitutional Rights of the Accused § 4:55 (3d ed.1996)).

[¶ 11] Here, the district court said a factual dispute existed regarding whether Graf invited the officers into the apartment. Two officers testified at the suppression hearing that Graf verbally consented to their entering the apartment, but they also testified they did not remember her specific words. Graf explicitly testified she did not consent to the officers' entry into the apartment, and she merely turned away and walked into the living room to tell Parisien the officers were there. The district court said that even if Graf invited the officers into the front entrance of her apartment, her actions did not indicate an affirmative consent to allow the officers to leave the front entryway and search the apartment. The court found the State had failed to meet its burden of showing affirmative conduct that was consistent with giving consent. The court observed the witnesses and assessed their credibility, and we decline the State's invitation to reweigh the evidence. We conclude there is sufficient competent evidence fairly capable of supporting the court's finding, and the court's decision is not contrary to the manifest weight of the evidence. We therefore affirm the district court's holding that the officers' initial entry into the apartment was unlawful.

B

[¶ 12] Parisien and Graf argue Parisien's consultation with an attorney and subsequent consent to search does not purge the taint of the officers' initial unlawful entry into the apartment.

[¶ 13] In *State v. Smith*, 2005 ND 21, ¶ 26, 691 N.W.2d 203, we outlined the standard for determining whether a

subsequent consent to search purges the taint of prior unlawful police activity. *See Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Under *Smith,* a court must engage in a two-step inquiry, first employing a totality-of-the-circumstances analysis to determine whether the subsequent consent to search was voluntary. *Smith,* at ¶ 26. If the consent was voluntary under the totality of the circumstances, the court must then proceed to the second inquiry and determine whether the taint of the prior unlawful conduct is purged, considering: (1) the temporal proximity between the illegal search or seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.*

[¶ 14] The district court said there was a short temporal proximity between law enforcement's unlawful entry into the apartment and the time when officers began asking Parisien for consent to search the apartment. Although noting some courts have found a short temporal proximity resulted in a tainted consent to search, the district court nevertheless said that intervening circumstances may be sufficient to break the causal connection between unlawful conduct and consent. The crux of the court's rationale for deciding Parisien's consent purged law enforcement's prior unlawful entry into the apartment is the court's conclusion that Parisien's consultation with an attorney before signing the consent to search was an intervening circumstance sufficient to purge the taint of the prior illegality.

[¶ 15] In *Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254 the United States Supreme Court held that warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), alone and per se, cannot always make a confession sufficiently a product of free will to break, for

Fourth Amendment purposes, the causal connection between law enforcement illegality and a confession. In *Brown,* at 611, 95 S.Ct. 2254 Justice Powell, in an opinion concurring in part, outlined a requirement for some demonstrably effective break in the chain of events leading from an illegal arrest to a statement, such as actual consultation with counsel or the accused's presentation before a magistrate for a determination of probable cause, before the taint of illegal conduct can be removed.

[¶ 16] Other courts have recognized that consultation with an attorney or a relative is an intervening circumstance that can purge the taint of a prior Fourth Amendment violation. *See United States v. Buchanan,* 904 F.2d 349, 356 (6th Cir. 1990) (defendant "did not consult with an attorney prior to consenting to the search"); *United States v. George,* 883 F.2d 1407, 1416 (9th Cir.1989) ("[t]his simply is not a case where [defendant] . . . consulted with an attorney"); *United States v. Wellins,* 654 F.2d 550, 555–56 (9th Cir.1981) ("crucial factor in this case is that [defendant] was permitted to consult with his attorney"); *People v. Boyer,* 38 Cal.4th 412, 42 Cal.Rptr.3d 677, 133 P.3d 581, 609 (2006) ("opportunity for legal consultation is critically important in determining whether a consent to search was purged of the primary taint of a prior Fourth Amendment violation"); *State v. Shular,* 400 So.2d 781, 782 (Fla.Dist.Ct. App.1981) ("causal connection between illegal arrest and [subsequent confession] sufficiently attenuated as to purge any taint from the arrest . . . [where defendant] met alone with his parents for over an hour and spoke with his attorney"); *State v. Huddleston,* 924 S.W.2d 666, 675 (Tenn. 1996) ("one example of an intervening circumstance . . . is arrestee's consultation with an attorney, relative, friend, or priest"). *See also United v. Juarez,* 573 F.2d 267, 274 (5th Cir.1978) (fact that de-

fendant was practicing attorney who had represented criminal defendants and was schooled in criminal law supported voluntariness of defendant's consent to search).

[¶ 17] Here, law enforcement permitted Parisien to consult with his mother and an attorney before he consented to the search of the apartment. According to one officer, the attorney spoke with the officer before speaking with Parisien, and the attorney spoke with Parisien for about ten to fifteen minutes in the hallway. According to Parisien, the attorney "took [Parisien] down the hall to the front steps to talk with [Parisien]," and Parisien "told [the attorney] what was going on [and the attorney] told [Parisien] to sign the consent to search because [the attorney] felt they were going to get the warrant anyway." The attorney also served as a witness when Parisien signed the written consent to search the apartment. The nature of Parisien's private consultation with an attorney is the crucial factor in this case. Under these circumstances, we conclude Parisien's consent to search the apartment was voluntary and his consultation with an attorney was a sufficient intervening circumstance to purge the taint of the prior unlawful entry into the apartment. Moreover, on this record, we cannot say that the unlawful police activity was so flagrant as to require suppression of the seized evidence. We therefore conclude the district court did not err in denying the motion to suppress the evidence found in the apartment.

C

[¶ 18] Because of our resolution of the consent issue, we need not address whether the evidence would have been inevitably discovered.

IV

[¶ 19] We affirm the convictions.

[¶ 20] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.