2007 ND 86

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Ronald Gene ALBAUGH, Defendant and Appellant.**

No. 20060334.

Supreme Court of North Dakota.

June 7, 2007.

Tracy Jo Peters, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

William Kirschner, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Ronald Albaugh appeals from a judgment entered upon a N.D.R.Crim.P. 11 conditional plea agreement, which reserved the right to appeal the court's denial of his motion to suppress evidence. Concluding the officer was engaged in a

valid community caretaking encounter when he entered the premises and was acting upon the express consent of the defendant when he discovered the illegal contraband in plain view, we affirm.

I

[¶ 2] On September 17, 2005, West Fargo police officer Ken Zeeb was dispatched to a commercial shop structure in West Fargo. The building's landlord, Norm Diede, had called the police department to check on his property after he had served an eviction notice on a tenant. Diede was concerned someone was still in possession of the premises. Diede stated he wanted the police present just in case someone was there and to prevent any problems that may arise if he encountered anyone at the shop.

[¶ 3] Upon arriving at the shop, Zeeb spoke with Diede outside. Diede informed the officer that he was "there to verify that everybody and everything had been removed, and he wanted the West Fargo Police there in case somebody was there and there would be problems that would arise." While Diede entered the building, Zeeb stood in the doorway. Zeeb heard Diede speaking with someone inside, so he entered the shop until he could see the person with whom Diede was speaking. Diede was speaking with the defendant, Albaugh. Albaugh's brother, Robert, owned Albaugh Construction, the tenant business. Albaugh had been sleeping at the shop in the upstairs office/loft area with Robert Albaugh's permission.

[¶ 4] Zeeb asked Albaugh if he had any identification on him. Albaugh tried to find his identification in a vehicle inside the shop. When he could not find it, he told Officer Zeeb it might be upstairs. Zeeb asked if Albaugh minded if he came up with him. Albaugh responded, "Okay, and motioned with his hand for [Zeeb] to

follow him." Zeeb followed Albaugh upstairs. In plain view on the coffee table, Zeeb noticed a small baggie of what he thought was methamphetamine and some marijuana paraphernalia. Upon seeing this contraband, Zeeb arrested Albaugh.

[¶ 5] Immediately following the arrest, Zeeb searched the area in the immediate vicinity of the defendant. During this search, Officer Zeeb located additional drug paraphernalia. Zeeb then moved Albaugh from the upstairs area and placed him in the patrol car. Zeeb called in a detective to question Albaugh. Detective Brad Berg arrived at the scene shortly after the call. Berg Mirandized Albaugh and questioned him. During the questioning, Albaugh conceded the drug paraphernalia Officer Zeeb found was his. Albaugh told Detective Berg that there was more paraphernalia in one of the cars outside the shop. Before retrieving the paraphernalia, Detective Berg asked Albaugh if he would consent to a broader search of the shop and the vehicles. Albaugh orally consented, but Detective Berg prepared a written consent to memorialize the agreement. The written consent allowed the officers to search the entire shop and several vehicles located on the premises. The written consent provided that the search was voluntary and was not premised on any threats or promises being made. Albaugh was informed verbally and in writing that he could refuse to sign the consent form. Albaugh was given time to read the consent form and to ask questions about it. After reading the consent, Albaugh signed it. The officers then retrieved the drug paraphernalia Albaugh had mentioned during his conversation with Detective Berg.

[¶ 6] Albaugh moved to suppress the evidence on the basis that Officer Zeeb illegally entered the shop without a warrant and all subsequently found items should be suppressed because they are the

"fruit of the poisonous tree." The district court denied Albaugh's motion.

## II

[¶ 7] On appeal, Albaugh argues the evidence should have been suppressed because Officer Zeeb did not have a warrant and had no permission or authority to enter the shop. The State argues Officer Zeeb was engaged in a proper community caretaking function, which did not constitute a "search" for Fourth Amendment purposes. The State also argues the evidence seized without a warrant falls within the "plain view" exception to the search warrant requirement and the subsequent searches of the shop and vehicles were valid under the "consent" exception to the search warrant requirement.

## III

[¶ 8] The standard of review for a district court's decision on a motion to suppress evidence is well established. As this Court recently wrote in *State v. Goebel*, 2007 ND 4, 725 N.W.2d 578:

When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. We recognize that the district court is in a superior position to assess the credibility of witnesses and weigh the evidence. *State v. Woinarowicz*, 2006 ND 179, ¶ 20, 720 N.W.2d 635 (citations omitted). Generally, a district court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. *Id.* Questions of law are fully reviewable on appeal, and whether a finding of fact

meets a legal standard is a question of law. *Graf*, at ¶ 7.

*Goebel*, at ¶ 11. In this case, the district court held:

1. The entry of Officer Zeeb into the premises was a legitimate activity, not protected by the Fourth Amendment.

2. The subsequent seizure of items found on the coffee table was pursuant to the plain view exception after the Defendant consented to have the officer follow him upstairs.

3. The items in Defendant's immediate area were found subsequent to a search incident to a valid arrest.

4. After the Defendant's arrest, the rest of the [property] was found pursuant to a signed written consent, and is therefore valid.

5. The motion to suppress is DENIED.

## IV

[¶ 9] Albaugh argues Officer Zeeb's initial entry into the shop was illegal. Under the circumstances, we conclude Zeeb's entry was reasonable.

[¶ 10] "Unreasonable searches and seizures are prohibited by the U.S. Const. amend. IV and N.D. Const. art. I, § 8." *Woinarowicz*, 2006 ND 179, ¶ 21, 720 N.W.2d 635. Generally, a warrantless entry and search is constitutionally impermissible unless it falls within a recognized exception to the search warrant requirement. *See id.; State v. Genre*, 2006 ND 77, ¶ 17, 712 N.W.2d 624. The warrant requirement protects an individual's reasonable expectations of privacy. *See State v. Proell*, 2007 ND 17, ¶ 8, 726 N.W.2d 591. As a long-term guest, Albaugh had a reasonable expectation of privacy in the shop. *State v. Oien*, 2006 ND 138, ¶¶ 8–9, 717 N.W.2d 593; *State v. Ackerman*, 499 N.W.2d 882, 884 (N.D.1993) (citing *Minne-*

*sota v. Olson*, 495 U.S. 91, 98–99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). Because this property was commercial, however, Albaugh's expectation of privacy is less than it would be in a residential property. *See New York v. Burger*, 482 U.S. 691, 699–700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) ("An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home.").

■ [¶ 11] Not all police encounters implicate the Fourth Amendment. This Court has recognized "several permissible types of law enforcement-citizen encounters, including: (1) arrests, which must be supported by probable cause; (2) 'Terry' stops, seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures." *State v. Boyd*, 2002 ND 203, ¶ 6, 654 N.W.2d 392 (quotations omitted). A Fourth Amendment "seizure" occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. . . ." *State v. Bachmeier*, 2007 ND 42, ¶ 10, 729 N.W.2d 141 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ [¶ 12] The district court in this case considered Zeeb's entry into the shop a legitimate activity under the community caretaker law enforcement function. The community caretaker function can be described as citizen-law enforcement encounters "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). When considering whether an encounter can be properly characterized under the community caretaker function, this Court has considered the manner in which the encounter occurred, any orders directed at the citizen, or a demand for a response. *Id.; State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992). "However, even a casual encounter can become a seizure if a reasonable person would view the officer's actions—if done by another private citizen—as threatening or offensive." *Boyd*, at ¶ 7 (citing *Langseth*, at 300). "This may occur through an order, a threat, or a weapon display." *Id.* (citing *Langseth*, at 300). In situations where it is obvious that a citizen neither needs nor desires assistance, the community caretaker function is inapplicable. *Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶ 9, 665 N.W.2d 45; *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478; *State v. DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579.

[¶ 13] The essential inquiry is whether Zeeb had the right to enter the shop. The district court found "Officer Zeeb entered the premises through an open and unlocked door *at the request of the landlord.* . . ." (Emphasis added). By the tenant's concession and the terms of the lease, the landlord had the right to enter the shop. The tenant, Albaugh's brother, testified he was three months behind in rent and acknowledged the landlord had the right of entry if he defaulted on the terms of the lease. The landlord was the individual for whom Zeeb was performing the community caretaker function. The landlord requested Zeeb to be present in case he encountered a tenant or problems arose. Officer Zeeb had a reasonable belief that the shop was expected to be empty and in the event the landlord encountered someone in the shop, his assistance would be needed. Zeeb waited outside the shop, which, according to Detective Berg, was "a public business," with one door "apparent-

ly for public access to what appeared to be a public business."

[¶ 14] In *State v. Kitchen*, 1997 ND 241, ¶¶ 13–15, 572 N.W.2d 106, this Court acknowledged certain areas of a home were entitled to extremely limited Fourth Amendment protection because no individual could reasonably expect a great amount of privacy in an area where the public was welcome. *See also* 1 Wayne R. LaFave, *Search and Seizure* § 2.3(f) at 600–603 (4th ed.2004). Similarly, no individual could reasonably expect a great amount of privacy in a commercial business location, where the public was apparently welcome. *Cf. Kitchen*, at ¶¶ 13–15; *see also Burger*, 482 U.S. at 699–700, 107 S.Ct. 2636 (noting the limited expectation of privacy in a commercial premises). We conclude Officer Zeeb's entry was reasonable under the circumstances in light of the landlord's request for and consent to the officer's presence, the expectation the shop was supposed to be vacant, and the lesser expectation of privacy due to the commercial nature of the property.

## V

[¶ 15] Albaugh also claims Officer Zeeb had no authority to demand he produce his identification. Albaugh claims the officer's request was an order or demand for compliance under *Boyd*, 2002 ND 203, ¶ 10, 654 N.W.2d 392, which removes the officer's actions from the realm of a community caretaker. Albaugh mischaracterizes the facts on appeal. The record indicates Officer Zeeb did not demand Albaugh produce his identification. Officer Zeeb testified he asked Albaugh "if he had any identification on him." Albaugh could have refused Officer Zeeb's request. *See State v. Halfmann*, 518 N.W.2d 729, 731 (N.D.1994) (holding that where an officer interacts with a citizen in a conversational manner, makes no orders, and does not

demand a response, no Fourth Amendment seizure has occurred). There is no indication in the record that this conversation was anything but casual, consensual, and civil. Albaugh's claim fails.

## VI

[¶ 16] Albaugh claims the evidence seized during the encounter must be suppressed under the exclusionary rule unless the warrantless seizure fits within a clearly delineated exception to the warrant requirement. Having held the entry into the shop was reasonable under the circumstances, we address the clearly delineated exceptions to the search warrant requirement applicable in this case.

### A

[¶ 17] Albaugh claims his consent for the officer to follow him upstairs, where the officer observed drug contraband in plain view, was merely an acquiescence "to the officer's apparent authority to do whatever he wished." The district court, however, found it was undisputed that Albaugh consented to the officer's request to follow Albaugh upstairs. Albaugh presented no evidence his consent was not genuine or that it was coerced in any manner. We defer to the district court's findings of fact that consent was given. *See Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. We conclude Albaugh consented to the officer's request to follow him to the upstairs area.

### B

[¶ 18] Once upstairs, Officer Zeeb observed drug paraphernalia in plain view on the coffee table. Plain view is a clearly delineated exception to the search warrant requirement. Under the plain

view exception, police officers may seize a clearly incriminating object without a warrant if the officers are lawfully in a position from which they view an object and the object's incriminating character is immediately apparent. *State v. Wamre,* 1999 ND 164, ¶ 16, 599 N.W.2d 268 (citing *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Horton v. California,* 496 U.S. 128, 135–36, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). In *Wamre,* we held:

> [I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" ... or at least no search independent of the initial intrusion that gave the officers their vantage point.

*Id.* at ¶ 16 (quotations omitted). Here, Officer Zeeb was in a lawful vantage point when he observed the marijuana paraphernalia and the baggie of what appeared to be methamphetamine. Officer Zeeb properly seized the evidence without a warrant and arrested Albaugh for its possession. *See id.*

### C

[¶ 19] After Albaugh was arrested, the search of the immediate area was valid as a search incident to an arrest. A search incident to a valid custodial arrest is one exception to the warrant requirement. The U.S. Supreme Court defined the scope of this exception in *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which held an officer making a lawful custodial arrest may search the arrestee and the area within the arrestee's immediate control. *See also State v. Linghor,* 2004 ND 224, ¶ 5, 690 N.W.2d 201. "A search incident to

arrest is justified because '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification ... [i]t is the fact of the lawful arrest which establishes the authority to search.' " *State v. Overby,* 1999 ND 47, ¶ 7, 590 N.W.2d 703 (quoting *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

[¶ 20] Here, Albaugh was told he was under arrest. After Officer Zeeb arrested Albaugh, the officer conducted a search of the immediate area, where Zeeb found additional drug paraphernalia. Zeeb testified he searched "the coffee table, and the couch, and there might have been another stand, all kind of right there where we were standing." This additional drug paraphernalia was located within Albaugh's immediate area. Therefore, this search was reasonable under the search incident to the arrest exception to the search warrant requirement.

### D

[¶ 21] Albaugh consented to the subsequent searches of the shop and vehicles surrounding the shop area. Consent is another clearly delineated exception to the warrant requirement. *Woinarowicz,* 2006 ND 179, ¶ 21, 720 N.W.2d 635; *Genre,* 2006 ND 77, ¶ 17, 712 N.W.2d 624. Whether an officer has consent is a question of fact. *State v. Mitzel,* 2004 ND 157, ¶ 13, 685 N.W.2d 120. Here, the district court found Albaugh had consented to the searches. On appeal, Albaugh acknowledges he consented to the searches conducted shortly after his arrest. Albaugh signed a written "Permission to Search" form, which was witnessed by Detective

Berg and Officer Zeeb. The consent form provides:

> I am giving this written permission to these officers freely and voluntarily, without any threats or promises having been made, and after having been informed by said officer that I have a right to refuse this search and/or seizure.

Detective Berg testified he explained this form to Albaugh, allowed him to read it, and then offered to answer any of Albaugh's questions about the consent form. On this record, there is no indication Albaugh lacked the capacity to consent, was illiterate, was underage, or did not give the consent, freely, voluntarily, or in an intelligent manner. The written consent, along with oral consent, clearly indicated Albaugh granted Zeeb and Berg authority to search the shop and the vehicles. The subsequent searches were valid under the consent exception to the warrant requirement.

## VII

[¶ 22] We affirm the district court's judgment.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.