Filed 2/21/08 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2008 ND 27

State of North Dakota, Plaintiff and Appellee

v.

Steven R. Schmalz, Defendant and Appellant

Nos. 20070127 & 20070128

Appeals from the District Court of Morton County and the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Lloyd C. Suhr (argued), Burleigh County Assistant State’s Attorney, and Matthew Ramage-White (on brief), appearing under the Rule on the Limited Practice of Law by Law Students, Courthouse, 514 East Thayer Avenue, Bismarck, ND 58501, and Allen M. Koppy (appeared), Morton County State’s Attorney, 210 2nd Avenue NW, Mandan, ND 58554, for plaintiff and appellee.

Jodi L. Colling (argued), Dickson Law Office, 107 W. Main Ave., Ste. 150, P.O. Box 1896, Bismarck, ND 58502-1896, for defendant and appellant.

State v. Schmalz

Nos. 20070127 & 20070128

Kapsner, Justice.

[¶1] Steven Schmalz appeals from two criminal judgments following his conditional guilty pleas for possession of marijuana in both Burleigh and Morton counties, arguing the trial court erred in denying his motion to suppress evidence.  We affirm the criminal judgments.

I

[¶2] Burleigh County Sheriff’s Deputy Simon Scheett received “intel,” allegedly indicating Schmalz “had involvement with narcotics.”  Based on this information, Deputy Scheett began an investigation of Schmalz.  As part of the investigation, Deputy Scheett, along with another officer, searched trash that had been placed on the sidewalk in front of Schmalz’s home.  During their search of the trash, the officers found a paper towel with dark residue, which Deputy Scheett believed to be burnt marijuana residue, packaging tape, which Deputy Scheett said smelled of marijuana, and cellophane packaging, which Deputy Scheett said smelled of marijuana also.  Along with these items, the trash contained mail addressed to Schmalz.

[¶3] The day after the trash can search, Deputy Scheett and an Assistant Burleigh County State’s Attorney requested a warrant to search Schmalz’s home from a Burleigh County district court judge.  At the hearing on the application for a search warrant, Deputy Scheett testified about the “intel” he received, allegedly providing Schmalz was involved with drugs.  He did not disclose the names of the informants or the sources of the information, nor did he attempt to deliver any detailed information regarding what had been communicated to the police in the intelligence.

[¶4] In the application for the search warrant, Deputy Scheett testified this intelligence prompted him to conduct further investigation of Schmalz.  He testified he and another officer went to the sidewalk in front of Schmalz’s home, where trash was regularly placed for pick-up and disposal, to conduct a search.  He testified the search of the trash in front of Schmalz’s residence uncovered a paper towel with what appeared to be burnt marijuana residue, packaging tape that carried the scent of marijuana, and a cellophane wrapper that also smelled of marijuana.  Along with this trash, the officers found mail addressed to Schmalz.  Deputy Scheett did not, however, testify how many trash cans were placed on the sidewalk for disposal, whether this trash disposal drop-off point was typically used as the disposal point for the entire trailer park, nor did his testimony explicitly provide whether the mail addressed to Schmalz was found in the same trash container as the material containing marijuana or smelling of marijuana.  Based on Officer Scheett’s testimony, the judge issued a warrant to search Schmalz’s home.

[¶5] A few days later, Deputy Scheett contacted Schmalz, telling Schmalz he had a warrant to search his home and requested he and Schmalz meet in Mandan so that Schmalz could accompany the police to his home for the search.  Schmalz met with Deputy Scheett and another officer in a parking lot in Mandan, where he left his car and then rode to his home with the officers.  During the search of Schmalz’s home in Bismarck, the police found marijuana.

[¶6] After finding the drugs in Schmalz’s home, the officers asked Schmalz if he had any marijuana in his vehicle, which was parked in Mandan.  Schmalz stated he did not.  The officers asked Schmalz to consent to a search of his vehicle, and after some hesitation, Schmalz consented.  During the search of Schmalz’s vehicle, the police found a small quantity of marijuana.

[¶7] Schmalz was charged with possession of marijuana in both Burleigh and Morton counties.  Before the date set for trial, he moved to suppress evidence gathered in both searches.  He argued there was insufficient evidence to support the issuance of the warrant, and the officers should not have searched his trash based only on the information received from an informant.  For these reasons, Schmalz argued the evidence derived from the search of his home should be suppressed.  He further argued the search of his vehicle was unconstitutional, because the search of the vehicle was a product of the allegedly unconstitutional search of his home, and therefore the evidence acquired as a result of the vehicle search should have been suppressed under the fruit-of-the-poisonous-tree doctrine.  The district court denied Schmalz’s motion to suppress.  Schmalz entered conditional guilty pleas to both possession charges.

[¶8] Schmalz appeals, arguing his convictions should be overturned and he should be allowed to withdraw his conditional guilty pleas because his Fourth Amendment right against unreasonable searches and seizures was violated.

II

A. Sufficiency of the Warrant

[¶9] When reviewing a district court’s decision to grant or deny a motion to suppress, this Court gives deference to the district court’s findings of fact, and conflicts in testimony are resolved in favor of affirmance.  
State v. Albaugh
, 2007 ND 86, ¶ 8, 732 N.W.2d 712 (citing 
State v. Goebel
, 2007 ND 4, ¶ 11, 725 N.W.2d 578); 
State v. Graf
, 2006 ND 196, ¶ 7, 721 N.W.2d 381.  While the district court’s factual determinations are given great deference, questions of law are fully reviewable on appeal.  
Albaugh
, at ¶ 8 (citing 
Goebel
, at ¶ 11).

[¶10] The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, 
State v. Ressler
, 2005 ND 140, ¶ 10, 701 N.W.2d 915 (citation omitted), protects “[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.”  U.S. Const. amend. IV; 
see also
 N.D. Const. art. I, § 8.  To protect against unreasonable searches and seizures, “[p]robable cause is required for a search warrant under the Fourth Amendment to the United States Constitution and Article I, Section 8 of our state constitution.”  
State v. Thieling
, 2000 ND 106, ¶ 7, 611 N.W.2d 861 (citing 
State v. Wamre
, 1999 ND 164, ¶ 5, 599 N.W.2d 268).

[¶11] Probable cause exists when the facts and circumstances relied upon by the judge who issues the warrant would lead a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.  
Thieling
, at ¶ 7 (citing 
State v. Johnson
, 531 N.W.2d 275, 278 (N.D. 1995)).  “Although each piece of information may not alone be sufficient to establish probable cause and some of the information may have an innocent explanation, ‘probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers.’”  
Thieling
, at ¶ 7 (quoting 
State v. Damron
, 1998 ND 71, ¶ 7, 575 N.W.2d 912).  “We also recognize ‘courts must take into account inferences and deductions that a trained and experienced officer makes.’”  
Thieling
, at ¶ 8 (quoting 
State v. Mische
, 448 N.W.2d 415, 419 (N.D. 1989)).  However, when information presented to the judge who issues the warrant causes only suspicion and warrants further investigation, probable cause does not exist.  
Thieling
, at ¶ 8 (citations omitted).  “Bare-bones” information is not sufficient to satisfy the probable cause requirement for a warrant.  
Damron
, at ¶ 7 (citing 
State v. Woehlhoff
, 540 N.W.2d 162, 166 (N.D. 1995)).

[¶12] The determination of whether probable cause exists to issue a search warrant is a question of law.  
Thieling
, at ¶ 8 (citing 
Damron
, at ¶ 5).  Deference is given to the magistrate judge’s findings if there is a substantial basis to determine probable cause exists.  
Thieling
, at ¶ 8 (citations omitted).  “‘We resolve doubt about the sufficiency of an affidavit in support of a request for a search warrant in favor of sustaining the search.’”  
Id.
 (quoting 
Wamre
, at ¶ 7); 
see also
 
State v. Roth
, 2004 ND 23, ¶ 6, 674 N.W.2d 495 (citing 
State v. Ballweg
, 2003 ND 153, ¶ 12, 670 N.W.2d 490) (“We generally defer to a magistrate’s determination of probable cause if a substantial basis for the conclusion exists, and doubtful or marginal cases should be resolved in favor of the magistrate’s determination.”).

[¶13] This Court’s review of the validity of a search warrant is independent of the trial court’s determination.  
State v. Hage
, 1997 ND 175, ¶ 11, 568 N.W.2d 741.  In making this independent determination as to the existence of probable cause, the reviewing court may not look beyond the four corners of the affidavit or application for issuance of the warrant.  
Roth
, at ¶ 25 (citations omitted).

[¶14] Deputy Scheett testified during the warrant application hearing that he had received “intel,” allegedly providing Schmalz was involved with drugs.  Deputy Scheett did not disclose the names of the informants or the sources of the information, nor did he attempt to deliver any detailed information regarding what exactly had been communicated to the police in the “intel.”  Schmalz properly notes this information does not sustain a finding of probable cause.  
See, e.g.
, 
Roth
, at ¶ 12 (quoting 
Hage
, at ¶ 17) (“An anonymous informant is one unknown to both the investigating officer and the magistrate.  We have stated within the context of anonymous informants that an ‘informant must supply information from which one may conclude that the informant is honest and his information is reliable, or from which the informant’s basis of knowledge can be assessed.’”); 
Franks v. Delaware
, 438 U.S. 154, 165 (1978) (providing that, in order to rely exclusively on anonymous informant tips for the purposes of obtaining a warrant, the warrant application must contain more detailed underlying evidence upon which one could determine the informant was credible and reliable).  But at the warrant hearing, the State did not exclusively rely on the “intel” in requesting the warrant.  The insufficiency of this piece or layer of evidence does not, in and of itself, defeat the possibility of finding probable cause; simply because the warrant application presents information received from an informant, does not mean the credibility and reliability of that informant must be proven, when other evidence supporting probable cause exists.  
See, e.g.
, 
Damron
, at ¶ 7 (citations omitted) (explaining “probable cause is the sum total of layers of information” and all of the evidence must be viewed cumulatively to determine whether the standard has been met).

[¶15] At the warrant hearing, Deputy Scheett testified the information from the unnamed source prompted him to conduct further investigation of Schmalz.  He testified he and another officer searched trash in front of Schmalz’s home, which was regularly placed at that location for pick-up and disposal.  During the search of the trash, the officers discovered the paper towel with marijuana residue, packaging tape that carried the scent of marijuana, and cellophane packaging that also smelled of the drug.  The officers found mail addressed to Schmalz in the trash.  Deputy Scheett did not testify during the hearing as to how many trash cans were placed on the sidewalk for disposal, nor did he testify as to whether the mail addressed to Schmalz was found in the same trash bag as the material containing marijuana or smelling of marijuana.  Further, there was ambiguity as to whether this trash disposal drop-off point was typically used as the disposal point for the entire trailer park, or whether this spot was used for Schmalz’s residence exclusively.  With regard to these factual issues, the transcript for the hearing for application for warrant provided:

Q:  And explain why you’re requesting to search the area 312 Oxford [D]rive  [Schmalz’s residence].

A:  I received intel regarding 312 Oxford Drive and a Steve Schmalz that Steve Schmalz had involvement with narcotics.  I conducted . . . a trash pull on May 22nd, 2006, at approximately 23 — or 11:45 p.m.  In the trash we discovered a packing tape bundled up with an odor of marijuana, cigarette cellophane with an odor of marijuana, and a paper towel that appeared to be used for cleaning marijuana paraphernalia.  It had a dirty blackish residue, and it — there was an odor of burnt marijuana on it.  Also there was mail addressed to Steve Schmalz, 312 Oxford Drive, Bismarck, North Dakota.

. . . .

Q:  Where was the garbage located when you actually searched it?

A:  It was on the west side, the front of the residence on the sidewalk by the driveway of 312 Oxford Drive where the garbage cans in that area are set out for trash pickup.

[¶16] The facts surrounding the trash can search are thin.  There was minimal information provided at the hearing to show the nexus between the drug residue, the other drug-scented trash, and the mail connecting those items to Schmalz’s residence.  It is not explicitly clear whether the drug evidence and mail were found together or separately in a single bag or can and, as a result, the nexus between the drug evidence and the mail tying that evidence to Schmalz’s residence is questionable.  However, it can be inferred the judge understood the testimony to mean the items were all in the same can or bag from the first answer above.

[¶17] Because this case presents a questionable nexus tying Schmalz to a substance officers believed to be marijuana, based on their experience and training, but without confirmation from a lab or field test of the substance, this warrant hearing provides a “marginal” or “doubtful” case.  However, the doubtful and marginal cases require this Court to affirm the magistrate’s determination that probable cause existed, so long as there is a substantial basis for the conclusion.  
Roth
, 2004 ND 23, ¶ 6, 674 N.W.2d 495.  While there is minimal connection of the contraband to Schmalz, the mail and drug evidence, as interpreted by the magistrate, amount to a substantial basis for his opinion.

[¶18] Schmalz points out that the dark colored residue the officers believed to be burnt marijuana was never tested to confirm it was marijuana.  The cellophane wrapping and tape smelled of marijuana; on these two pieces of evidence, there was no apparent marijuana or marijuana residue.  Thus, there is a question as to whether the determination, by a trained and experienced narcotics officer, that residue and other objects that smell like marijuana constituted a factual basis upon which probable cause established Schmalz’s garbage contained marijuana and that Schmalz had been or was committing a crime.

[¶19] In 
State v. Woinarowicz
, this Court discussed the standard upon which probable cause may be established.  2006 ND 179, ¶¶ 30, 31, 720 N.W.2d 635.  In 
Woinarowicz
, the defendant claimed officers did not have probable cause to arrest her because the officers did not conduct tests on plastic wrap they believed was used to hold methamphetamine.  
Id.
 at ¶ 30.  This Court explained that “whether the plastic wrap actually contained methamphetamine is not necessary to establish probable cause.”  
Id.
  Instead, “‘[t]o establish probable cause, the officer does not have to possess knowledge of facts sufficient to establish guilt; all that is necessary is knowledge that would furnish a prudent person with reasonable grounds for believing a violation has occurred.’”  
Id.
 (quoting 
State v. Spidahl
, 2004 ND 168, ¶ 10, 686 N.W.2d 115); 
see also
 
State v. Overby
, 1999 ND 47, ¶ 13, 590 N.W.2d 703 (“In assessing whether there is probable cause to arrest, police officers need not have knowledge or facts sufficient to establish guilt, only knowledge that would give a prudent person reasonable grounds to believe an offense has been or is being committed.”).  “‘Probable cause does not require that commission of the offense be established with absolute certainty, or proved beyond a reasonable doubt.’”  
Woinarowicz
, at ¶ 30 (quoting 
Spidahl
, at ¶ 11).  Facts giving rise to probable cause need not rise to the level of facts necessary to sustain a conviction for the criminal activities in question.  
Id.

[¶20] The mere smell of marijuana, as detected by a trained and experienced officer, has been held by this Court to create a sufficient factual basis upon which to establish probable cause.  
See, e.g.
, 
Overby
, at ¶ 13 (“[T]he officer was well-trained in identifying the odor of marijuana.  Under 
Binns
 and the particular facts of this case, we conclude Officer Nagel had probable cause to arrest Overby . . . .”); 
State v. Binns
, 194 N.W.2d 756, 758 (N.D. 1972) (“We believe, in this case, that the circumstances justified a warrantless search of the automobile, since the odor of burning marijuana which the officer recognized, and which he knew was coming from the automobile, gave him probable cause to believe that a felony was being committed.”).

[¶21] Based upon Officer Scheett’s testimony regarding his training and experience as a police officer, the smell of marijuana on all three pieces of evidence, and the existence of residue that looked like burnt marijuana, there was a sufficient factual basis to issue a warrant.  We acknowledge the facts surrounding this search warrant constitute a “marginal case”; however, as we stated in 
Roth
, 2004 ND 23, ¶ 6, 674 N.W.2d 495 “doubtful or marginal cases should be resolved in favor of the magistrate’s determination.”

B. Constitutionality of the Trash Can Search

[¶22] Schmalz next argues the trash can search should be deemed unconstitutional and the evidence derived therefrom should have been suppressed.  Schmalz urges this Court to depart from its current rule regarding searches of trash.  The rules governing the constitutionality of this issue in North Dakota and in federal courts provide “a warrantless garbage search would violate the Fourth Amendment only if the defendants had ‘a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.’”  
State v. Rydberg
, 519 N.W.2d 306, 309 (N.D. 1994) (quoting 
California v. Greenwood
, 486 U.S. 35, 39 (1988)).  In 
Rydberg
, this Court explained North Dakota’s constitutional prohibitions against unreasonable searches and seizures were nearly identical to those in the federal constitution.  
Rydberg
, at 310.  While our state constitution may provide greater individual rights than those afforded under the federal constitution, this Court explained, “like the Fourth Amendment, ‘Art. I, § 8 of the North Dakota Constitution is not implicated unless a reasonable expectation of privacy is invaded.’”  
Id.
 (quoting 
State v. Rode
, 456 N.W.2d 769, 771 (N.D. 1990)).  Relying on the reasoning provided in 
California v. Greenwood
, 486 U.S. at 41, this Court explained:

Based on the public location of Rydberg’s garbage, we conclude the garbage searches, in this case, did not violate Article I, § 8 of the North Dakota Constitution.  By placing her garbage on or against the public alley, where it was exposed to the general public, and with the express purpose of abandoning it to the trash collector, Rydberg waived any privacy interest she may have had in the garbage.

Rydberg
, at 310.  The Court further explained individuals who abandon their trash to collection have

“exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection.  It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public.  Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents’ trash or permitted others, such as the police, to do so.  Accordingly, having deposited their garbage ‘in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,’ respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.”

Id.
 at 309-10 (quoting 
Greenwood
, 486 U.S. at 40-41) (internal citations omitted).  Under the current rule in North Dakota and federal courts, Schmalz lost his expectation of privacy when he placed the trash for collection, and therefore the garbage search falls outside the protections of Article 1, section 8 of the state constitution and the Fourth Amendment to the federal constitution.

[¶23] Schmalz urges this Court to recognize, as a minority of other jurisdictions have, that “the public would not be entirely comfortable with the image of police officers overtly foraging through curbside garbage.”  Schmalz cites 
State v. A Blue in Color, 1993 Chevrolet Pickup, 2-Door, MT 14T-D899 VIN/2GCEC19KOP1153371
, 116 P.3d 800, 805 (Mont. 2005), for the proposition that there should be greater protection in trash can searches.  
A Blue in Color, 1993 Chevrolet Pickup
 provided that if citizens comply with refuse ordinances, which often require a public placement for the pick-up of trash, in exchange for such compliance, law enforcement wishing to search trash should comply with certain constraints, greater than those provided for in the federal constitution.  
Id.
  Schmalz urges this Court to limit the “nature and extent of permissible government intrusions into” trash searches, in exchange for compliance with refuse ordinances.  Schmalz cites no city ordinance or state statute with which he was required to comply in placing his trash at a public point.  
Id.
  
A Blue in Color, 1993 Chevrolet Pickup
 based the additional search protections largely upon the premise that citizens were required by law to place trash in a more public place for disposal; Schmalz has not asserted his reasonable expectations of privacy were lessened because a statute required such conduct.  
A Blue in Color, 1993 Chevrolet Pickup
 is not applicable to the present case.

[¶24] Finally, Schmalz cites 
Litchfield v. State
, 824 N.E.2d 356, 363-64 (Ind. 2005), for the proposition that warrantless trash searches may be upheld as constitutional because the property has been abandoned, but that these searches should require greater constraints on the officers who search to prevent indignity and embarrassment to garbage owners and to prevent completely random or wholesale searches of a private citizen’s trash.  
Litchfield
 provides that a warrantless search of trash may be held constitutional if (1) officers conduct the search or remove the trash in a manner similar to the trash collector and (2) the officers must have an articulable individualized suspicion of criminal activity to justify the garbage search and seizure. 
Id.

[¶25] When evaluating the constitutionality of a search and seizure under the Constitution of North Dakota, this Court employs the same test used by the United States Supreme Court.  
See, e.g.
, 
Rydberg
, 519 N.W.2d at 310 (quoting 
Rode
, 456 N.W.2d at 771) (explaining that “like the Fourth Amendment, ‘Art. I, § 8 of the North Dakota Constitution is not implicated unless a reasonable expectation of privacy is invaded.’”).  
Litchfield
 explains Indiana does not use the same Fourth Amendment analysis in interpreting its own state prohibition against unreasonable searches and seizures:  “Although [Indiana’s constitutional] language tracks the Fourth Amendment verbatim, Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure.”  
Litchfield
, at 360.  The extra limitations placed on warrantless garbage searches in Indiana can be attributed to its unique analysis of searches and seizures under its state constitution.  We decline to adopt Indiana’s analysis of searches and seizures.

[¶26] Schmalz did not have a reasonable expectation of privacy in his trash once he placed it out in public for disposal.  Therefore, the evidence gathered in the trash was admissible for the purposes of the warrant application.

III

[¶27] Because we find probable cause did exist to issue the warrant for Schmalz’s residence, we need not address the applicability of the good-faith exception in this case.

IV

[¶28] Schmalz raises the fruit-of-the-poisonous-tree doctrine, arguing that because the search of his trash and home were unconstitutional, the subsequent search of his vehicle was tainted, and the evidence found in his vehicle should be excluded.  We need not address this issue because we sustain the probable cause finding of the magistrate and find the trash search to be constitutional.

V

[¶29] We affirm the criminal judgments.

[¶30] Carol Ronning Kapsner

Dale V. Sandstrom

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

Crothers, Justice, concurring in the result.

[¶31] I agree with the majority that this case provides a “close call” whether evidence  supporting the warrant was sufficient.  However, the lack of evidence about the location of the garbage, about how the contraband was found within the garbage, and about the location of mail within the garbage failed to provide a nexus to the defendant and to provide probable cause to search his home.  However, under the good-faith exception, suppression of evidence is not the appropriate remedy if law enforcement relies on an objectively reasonable search warrant.  
State v. Dodson
, 2003 ND 187, ¶ 20, 671 NW2d 825.  Here, law enforcement sought and obtained an objectively reasonable search warrant.  The remaining disqualifying factors are not present.  
See
 
Roth v. State
, 2007 ND 112, ¶ 32, 735 N.W.2d 882.  The officer’s good-

faith reliance on the warrant is evident, and I would not suppress the seized evidence.

[¶32] Daniel J. Crothers